IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKY HAMMONDS,                              No. CIV S-06-2397-GEB-CMK-P

      Plaintiff,

  vs.                                      FINDINGS AND RECOMMENDATIONS

M. MARTEL, et al.,

      Defendants.

_____/

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are plaintiff's requests for injunctive relief (Docs. 11 and 14).

## I. BACKGROUND

**A.**     **Allegations in the Complaint**

      Plaintiff alleges that, in August 2005, his custody status was reviewed by a prison committee and changed to "E.O.P.," which plaintiff describes as "mentally ill out-patient custody." According to plaintiff, this change was based on a psychological evaluation performed by prison medical clinicians. Plaintiff states that prison staff ". . . specifically told the

mental health staff that they were loosing [sic] money due to their evaluation as to my mental state of mind when housed with cell mates." Plaintiff adds: "So, to give merit to their evaluation, clinical psychologists made me E.O.P. and sent me to C.S.P. Sacramento to the psychiatric [secured housing unit] where I was again single-celled for 7 months." As to the defendants named in this action, plaintiff states: "The defendants in this petition acted on 4-17-06 to remove me from single cell status without reading the enclosed exhibits in this suit." According to plaintiff, the "enclosed exhibits" show that his mental disease is "a factor," presumably in the classification determination, and that he has a history of violent behavior ". . . when stressed and during confrontationary [sic] situations." .

After reciting difficulties with presenting grievances concerning his removal from single-cell status, plaintiff states: "I have had 5 different cell mates. . . In cell fights. Period on 2 occasions where I've been without a cell mate for weeks. So, the relief I request is as follows: Due to denial of medical care – deliberate indifference, because defendants in this matter deliberately ignored all relevant paperwork, and my fears that I related to clinicians & doctors and by overtly threatening me by saying they were loosing [sic] money and needed the bed space." Plaintiff alleges: "I am placed in the position of, keep getting cell mates and keep getting into violent confrontations where I've been hurt, whereby if I report them, I will be labled [sic] and targeted for retaliation for snitching. . ."

Plaintiff claims that ". . . the defendants have ignored all relevant documents, have not given petitioner further evaluations at Level 1 and Level 2 responses to even try to find out if petitioner is mentally fit to double cell." He states that defendants Martel, Dunlap, and Vance "were all involved in the decision to double-cell petitioner, disregarding relevant documentation." Plaintiff alleges that defendant Vasquez "offered no relevant documentation to validify [sic] committee's [custody] decision." As to defendant Vanderstein – who was plaintiff's clinician – plaintiff states that she "made no chrono available to the doctor (Vasquez) or committee even though, weekly, I voiced my weekly problems of cell fights and paranoia as

1  to my cell mates I started getting once I was certified to double cell." Plaintiff claims that
2  defendant Kim "stated that he and other doctors were no longer allowed to write chronos for
3  inmates who fit criteria for single celled." Plaintiff states that defendant Grannis, as the Chief
4  Appeal Coordinator, "either through deliberate actions or incompetence, sent back to me my
5  [inmate grievance]."

      **B.**      <u>**Allegations in the Instant Motions**</u>

7        In the instant motions, plaintiff states: "I experience conflict and eventual
8  physical altercations when celled in close proximity with other prisoners." He states that, since
9  being removed from single-cell status, he has had "over 9 cellies" with only short intervals
10 between when he was alone. Plaintiff adds that, when he tries to explain the problem to potential
11 cellmates, he is accused of a rules violation. He also states that prison officials have threatened
12 to take away his property if he refuses to comply. As to irreparable injury, plaintiff argues that
13 his continued placement in the same cell with other inmates is contributing to his mental illness.
14 For relief, plaintiff seeks a preliminary injunction requiring prison officials to place him on
15 single-cell status pending the outcome of this lawsuit.

**II.  DISCUSSION**

18       The legal principles applicable to requests for injunctive relief, such as a
19 temporary restraining order or preliminary injunction, are well established. To prevail, the
20 moving party must show either a likelihood of success on the merits of the underlying
21 controversy and the possibility of irreparable injury, or that serious questions are raised and the
22 balance of hardships tips sharply in the movant's favor. <u>See</u> <u>Coalition for Economic Equity v.</u>
23 <u>Wilson</u>, 122 F.3d 692, 700 (9th Cir. 1997); <u>Oakland Tribune, Inc. v. Chronicle Publ'g Co.</u>, 762
24 F.2d 1374, 1376 (9th Cir. 1985). The two formulations represent two points on a sliding scale
25 with the focal point being the degree of irreparable injury shown. <u>See</u> <u>Oakland Tribune</u>, 762
26 F.2d at 1376. Under any formulation of the test, however, the moving party must demonstrate

1  that there exists a significant threat of irreparable injury. See id.  In the absence of a significant
2  showing of possible irreparable harm, the court need not reach the issue of likelihood of success
3  on the merits. See id.  The loss of money, or an injury whose measure of damages can be
4  calculated in terms of money, will not be considered irreparable. See id. at 1334-35.
5              The standard for a temporary restraining order is essentially the same.  The
6  purpose in issuing a temporary restraining order is to preserve the status quo pending a more
7  complete hearing.  The cases contain limited discussion of the standards for issuing a temporary
8  restraining order due to the fact that very few such orders can be appealed prior to the hearing on
9  a preliminary injunction.  It is apparent however, that requests for temporary restraining orders
10 are governed by the same general standards that govern the issuance of a preliminary injunction.
11 See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist,
12 J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir.
13 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368
14 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the
15 balance of hardships because the merits of a controversy are often difficult to ascertan and
16 adjudicate on short notice.
17             Eastern District of California Local Rules impose additional requirements for a
18 motion for a temporary restraining order.  First, the court will consider whether the moving party
19 could have sought relief by a noticed motion for a preliminary injunctive at an earlier date
20 without the necessity of seeking last-minute relief by motion for a temporary restraining order.
21 See Local Rule 65-231(b).  Second, the moving party must provide specific documents to the
22 court in support of the requested temporary restraining order. See Local Rule 65-231©.
23             Finally, in cases brought by prisoners involving conditions of confinement, any
24 temporary restraining order or preliminary injunction must be narrowly drawn, extend no further
25 than necessary to correct the harm the court finds requires preliminary relief, and be the least
26 intrusive means necessary to correct the harm. See 18 U.S.C. § 3626(a)(2).

1   Here, the court finds that plaintiff has not made the required showing of
2   irreparable injury. As stated above, plaintiff must show a significant threat of irreparable injury.
3   Plaintiff's motions are based on his assertion that altercations arise when he is assigned a
4   cellmate and that these altercations are caused by and contribute to his mental illness. Even if it
5   is always true that plaintiff has altercations with every new cellmate, the standard is not met
6   because plaintiff has access to avenues of medical and mental health care other than being placed
7   on single-cell status. While plaintiff would not consider this an ideal arrangement, access to
8   such care provides plaintiff a possible remedy for any mental problems associated with
9   placement with another inmate. As to whether plaintiff would suffer irreparable physical injuries
10  as a result of placement with other inmates, on the current record the court cannot grant
11  injunctive relief based on speculation about what may happen in the future. Finally, with respect
12  to plaintiff's allegations that he suffers retaliation because he insists on single-cell status, such a
13  claim would be cognizable under 42 U.S.C. § 1983 and, for this reason, any alleged retaliation is
14  not irreparable.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that plaintiff's motions for injunctive relief (Docs. 11 and 14) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

/ / /
/ / /
/ / /
/ / /

1 | Findings and Recommendations." Failure to file objections within the specified time may waive
2 | the right to appeal. <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4 | DATED: April 18, 2007.

*[signature]*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE