IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY HAMMONDS, | No. CIV S-06-2397-GEB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| M. MARTEL, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is the motion to dismiss (Doc. 25) filed by defendants Grannis and Malfi on July 18, 2007.[1] Plaintiff has not filed an opposition.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] The remaining named defendants – Martel, Dunlap, Vance, Vasquez, Vanderstein, and Kim – have waived service and seek an extension of time to file an answer to the complaint.

1

## I.  BACKGROUND

Plaintiff names as defendants Martel, Malfi, Dunlap, Vance, Vasquez, Grannis, Vanderstein, and Kim.  Plaintiff alleges that, in August 2005, his custody status was reviewed by a prison committee and that his custody status was changed to "E.O.P.," which plaintiff describes as "mentally ill out-patient custody."  According to plaintiff, this change in custody status was based on a psychological evaluation performed by prison medical clinicians.  Plaintiff states that prison staff ". . . specifically told the mental health staff that they were loosing [sic] money due to their evaluation as to my mental state of mind when housed with cell mates."  Plaintiff adds: "So, to give merit to their evaluation, clinical psychologists made me E.O.P. and sent me to C.S.P. Sacramento to the psychiatric [secured housing unit] where I was again single-celled for 7 months."  As to the defendants named in this action, plaintiff states: "The defendants in this petition acted on 4-17-06 to remove me from single cell status without reading the enclosed exhibits in this suit."  According to plaintiff, the "enclosed exhibits" show that his mental disease is "a factor," presumably in the classification determination, and that he has a history of violent behavior ". . . when stressed and during confrontationary [sic] situations." .

After reciting difficulties with presenting grievances concerning his removal from single-cell status, plaintiff states: "I have had 5 different cell mates. . . In cell fights.  Period on 2 occasions where I've been without a cell mate for weeks.  So, the relief I request is as follows: Due to denial of medical care – deliberate indifference, because defendants in this matter deliberately ignored all relevant paperwork, and my fears that I related to clinicians & doctors and by overtly threatening me by saying they were loosing [sic] money and needed the bed space."  Plaintiff alleges: "I am placed in the position of, keep getting cell mates and keep getting into violent confrontations where I've been hurt, whereby if I report them, I will be labled [sic] and targeted for retaliation for snitching. . ."

/ / /

/ / /

Plaintiff claims that ". . . the defendants have ignored all relevant documents, have not given petitioner further evaluations at Level 1 and Level 2 responses to even try to find out if petitioner is mentally fit to double cell." He states that defendants Martel, Dunlap, and Vance "were all involved in the decision to double-cell petitioner, disregarding relevant documentation." Plaintiff alleges that defendant Vasquez "offered no relevant documentation to validify [sic] committee's [custody] decision." As to defendant Vanderstein – who was plaintiff's clinician – plaintiff states that she "made no chrono available to the doctor (Vasquez) or committee even though, weekly, I voiced my weekly problems of cell fights and paranoia as to my cell mates I started getting once I was certified to double cell." Plaintiff claims that defendant Kim "stated that he and other doctors were no longer allowed to write chronos for inmates who fit criteria for single celled." Plaintiff states that defendant Grannis, as the Chief Appeal Coordinator, "either through deliberate actions or incompetence, sent back to me my [inmate grievance]."

For relief, plaintiff seeks, among other things, an order directing defendants to place him back on single-cell status.

## II.  STANDARDS FOR MOTION TO DISMISS

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true and must construe them in the light most favorable to the plaintiff. See Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v.

1  McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than
2  those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).
3        To determine whether a complaint states a claim upon which relief can be granted,
4  the court generally may not consider materials outside the complaint and pleadings.  See Cooper
5  v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.
6  1994).  The court may, however, consider: (1) documents whose contents are alleged in or
7  attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;
8  (2) documents whose authenticity is not in question, and upon which the complaint necessarily
9  lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,
10 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,
11 see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson
12 v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).
13       Under these standards, a statute of limitations defense may be raised in a motion
14 to dismiss.  Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is
15 absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66 F.3d
16 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir.
17 2000) (en banc).

### III. DISCUSSION

20       Defendant Malfi, who was the prison warden at the time of the events outlined in
21 the complaint, argues that he cannot be held liable solely as an official holding a supervisory
22 position.  Defendant Grannis, who is the head of the inmate appeals division, argues that her
23 involvement in plaintiff's inmate grievances solely as supervisor of the appeals division cannot
24 establish liability.
25 / / /
26 / / /

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them. See id.   When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In this case, plaintiff's only allegation as to defendant Malfi is that, as warden, he was involved in the second level review of plaintiff's inmate grievance. As to Grannis, plaintiff alleges only that she was "incompetent" in handling his grievances, resulting in his continued double-cell status. The court agrees with defendants that these allegations are insufficient to establish the liability of supervisory personnel. Specifically, the allegations are both vague and conclusory. Plaintiff has not alleged a causal link between the conduct of defendants Grannis and Malfi in supervising other personnel and the constitutional violation allegedly resulting from his continued double-cell status.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss be granted;

2. Defendants Malfi and Grannis be dismissed, with prejudice; and

3. Defendants Martel, Dunlap, Vance, Vasquez, Vanderstein, and Kim be directed to file an answer to the complaint.

/ / /

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 24, 2007.

                                                 **CRAIG M. KELLISON**
                                                 UNITED STATES MAGISTRATE JUDGE